United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

JOHN DOE,                                                        No. C 09-00980 MHP

11
                        Plaintiff,

12                                                               **MEMORANDUM & ORDER**
        v.
13                                                               **Re: Defendant's Motion to Dismiss**
    MICHAEL J.  ASTRUE, Commissioner of the
14  Social Security Administration,

15                      Defendant.
                                                          /
16

17

18          Plaintiff John Doe brings this action against defendant Michael J. Astrue, in his capacity as

19  the Commissioner of the Social Security Administration ("Commissioner" or "defendant"), for

20  allegedly engaging in a practice of discrimination against plaintiff and other persons with mental

21  and/or developmental disabilities.  Plaintiff seeks injunctive and declaratory relief for violations of

22  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. section 794, and the Due Process Clause of

23  the Fifth Amendment of the United States Constitution.  Now before the court is defendant's motion

24  to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, under

25  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.  Having considered the parties'

26  arguments and submissions, and for the reasons set forth below, the court enters the following

27  memorandum and order.

28

BACKGROUND[1]

Plaintiff John Doe is a developmentally-disabled resident of San Francisco who has been diagnosed with autism, generalized anxiety disorder, and a number of other mental and cognitive impairments. See Complaint, Docket No. 3 ("Compl."), ¶¶ 5-6. Defendant heads the Social Security Administration, an agency of the federal government that provides, among others, benefits based on disability and economic status.

In 1995, Doe was deemed eligible for two types of benefits under the Social Security Act: Social Security Disability Income ("SSDI" or "Title II benefits"), which are benefits tethered to the recipient's disability status, and Supplemental Security Income ("SSI" or "Title XVI benefits"), which supplement SSDI if the recipient's monthly income falls below a certain threshold. Id. ¶¶ 8-9. In addition to a primary diagnosis, which in Doe's case was "mental retardation," an individual can receive additional disability codings, reflecting other impairments. A 1999 neuropsychological evaluation of Doe, conducted by one of defendant's examiners, established that plaintiff also suffered from epilepsy, Jacksonian seizures, psychotic disorder not otherwise specified, depressive disorder not otherwise specified, and borderline intellectual function. Id. ¶¶ 10-11. These additional diagnoses were not reflected in Doe's disability coding, however, due to defendant's finding of "insufficient evidence." Id.

Doe's disabilities affect his everyday life. He suffers from severe anxiety episodes arising from normal daily interactions, he experiences auditory and visual hallucinations, and he has both contemplated and attempted suicide. Id. ¶13. As a result of his cognitive deficits, Doe needs more time to understand basic instructions and he often misinterprets events and situations, which leads to unfounded fears and panic attacks that require medical intervention and occasionally incapacitate him. Id. ¶¶ 14, 66.

Soon after becoming eligible for Social Security benefits, Doe expressed a wish to live and work independently, despite his disability. Since 1996, Doe has been working, with variable intensity, at a number of "sheltered" work entities. Id. ¶¶ 15-20. This type of work, and the remuneration Doe would earn as a result, is separate from his SSI/SSDI benefits and is meant to

provide an incentive for Social Security beneficiaries to try to live independently.  Id.  Amounts earned in a "sheltered" job, do not count towards the threshold that triggers a reduction in benefits. To guide him towards work autonomy, Doe retained a job coach, whom he paid from his SSI benefits, as well as the services of several nonprofit organizations seeking to help individuals like Doe live independently.  Id. ¶¶ 17-18.  By 2003, Doe was making good progress and, as a result, his mother ceased to be his representative payee, enabling Doe to take charge of his own finances.  Id. ¶ 20.  However, now Doe also began to receive defendant's notices, which were previously mailed to his mother.

To determine the continued eligibility of Social Security beneficiaries, from time to time, defendant conducts reviews of a beneficiary's monthly income.  Id. ¶¶ 28, 30, 38, 42.  From a beneficiary's monthly earnings, defendant is supposed to deduct impairment-related expenses, such as amounts spent on medication, a job coach, or a therapist.  If the monthly income thus computed exceeds a certain threshold, the individual is said to engage in substantial gainful activity ("SGA") and his SSI benefits are reduced to reflect the increase in income.

Defendant has reviewed Doe's file several times since 2005, and, the complaint alleges, has failed to make the proper inquiries into the impairment-related deductions to which Doe was entitled.  Id. ¶ 38.  This eventually led to Doe's SSI benefits being reduced to zero, in August 2007. Id. ¶ 45.  At each step in the process, defendant sent Doe notices, according to defendant's regular practice, informing him of his right to appeal, provide more information, or otherwise participate in the eligibility evaluation process.  Id. ¶¶ 51-59.  The notices require prompt action usually within ten to fifteen days.  Id. ¶ 54.  In Doe's case, the notices, combined with the decrease in his monthly payments, triggered a state of heightened anxiety, delusional attacks, psychotic episodes, and vivid hallucinations that persist to this day.  Id. ¶¶ 62-68.

As a result, Doe's ability to function independently and to afford the same level of medical care has been severely diminished.  Moreover, because of his mental disability and his elevated state of anxiety, Doe has been unable to comprehend and act on the numerous notices he received.  Id. ¶¶ 68-69.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        In August 2007, after Doe's SSI benefits were terminated, Doe retained his current counsel, who also represents the plaintiff in Davis v. Astrue, Case No. CV 06-6108, (N.D. Cal. 2009) (Patel, J.).  In 2005, Davis filed an action styled "administrative class action" on behalf of himself, another named representative, and "similarly situated individuals" with defendant's Office of the General Counsel, alleging violations of Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 ("Rehabilitation Act") and the Due Process Clause of the Fifth Amendment.  See Docket No. 20, Bruce Dec., ¶ 2.  Defendant issued a final decision with respect to that action on July 27, 2006, and mailed a copy thereof to each of the named "class representatives."  See Docket No. 20, Exhs. 3A & 3B.  Doe alleges that he was one of the unnamed members of the aforementioned "administrative class" and has, therefore, exhausted his administrative remedies. Compl. ¶ 75.[2]  Even so, in November 2008, plaintiff brought an administrative appeal of defendant's decision to reduce his SSI benefits to zero, and in February 2009, plaintiff filed a civil rights violations complaint with defendant's Office of the General Counsel.  See Docket No. 11, Stella Dec. & O'Connor Dec.

        Doe filed his complaint in the present action on March 6, 2009, and is represented by the same counsel as the plaintiff in Davis v. Astrue.  Davis has since moved to consolidate the two cases for pre-trial and trial proceedings.  See Motion to Consolidate, Case No. CV 06-6108, Docket No. 95.

        Doe alleges defendant violated the Rehabilitation Act and the Due Process Clause of the Fifth Amendment by denying him due process and meaningful access to Social Security benefits. Doe seeks declaratory and injunctive relief establishing that defendant is in violation of the Rehabilitation Act and the Due Process Clause and ordering defendant to implement regulations and adjustments in its procedures that would bring the Social Security Administration into compliance with both the Rehabilitation Act and the Due Process Clause.  Compl. at 24-25.  Doe also seeks attorneys' fees.  Id. at 26.  Defendant moves to dismiss Doe's complaint both for lack of subject matter jurisdiction and for failure to state a claim.

LEGAL STANDARD

I.      Rule 12(b)(1): Subject Matter Jurisdiction

        A party may raise a challenge to the court's exercise of jurisdiction over the subject matter of an action under Federal Rule of Civil Procedure 12(b)(1).  Dismissal is appropriate under Rule 12(b)(1) when the plaintiff has failed to establish federal jurisdiction over the claim.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  A motion under Rule 12(b)(1) is appropriate when the jurisdictional issue is separable from the merits of the case, i.e., jurisdiction and substantive facts are not intertwined.  Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

        A Rule 12(b)(1) jurisdictional attack may be facial or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise involve federal jurisdiction. . . .  In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of the [p]laintiff's allegations."  Id.; see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

        A.      Standing

        The maximal constitutional bounds of federal courts' subject matter jurisdiction are defined by Article III of the U.S. Constitution, which extends only to "cases" and "controversies."  U.S. Const., art. III, § 2, cl. 1.  At a constitutional minimum, Article III standing requires the party invoking federal jurisdiction to show that it has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision."  Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (internal citations

omitted).  To satisfy the injury-in-fact requirement, the alleged harm must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted).  The party invoking federal jurisdiction bears the burden of establishing these elements.  Id. at 561.

II.      Rule 12(b)(6): Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996), but courts "are not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 129 S. Ct. at 1949-50.

6

United States District Court

For the Northern District of California

1    DISCUSSION

2    I.        Subject Matter Jurisdiction

3              A.        Plaintiff's Claims "Arise Under" the Social Security Act

4              Plaintiff invokes the court's jurisdiction over claims based on the Rehabilitation Act and the

5    Fifth Amendment's Due Process Clause.  While it is true that, under 28 U.S.C. section 1331, district

6    courts have "original jurisdiction of all civil actions arising under the Constitution [and] laws of the

7    United States," Congress has specifically excluded claims arising under the Social Security Act from

8    district courts' Section 1331 jurisdiction.  See 42 U.S.C. § 405(h).  Such claims may be heard in

9    district court only pursuant to the judicial review provisions included in the Social Security Act itself

10   and after the plaintiff has exhausted all available administrative remedies.  42 U.S.C. § 405(g).

11             A constitutional or statutory challenge to the actions of the Social Security Administration

12   may seek to recover two types of remedies, monetary and non-monetary.  When plaintiff claims "a

13   monetary benefit from the agency [such as] a disability payment, or payment for some medical

14   procedure," Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 11 (2000), "it is fruitless" to

15   argue that a claim seeking to recover benefits does not arise under the Social Security Act,

16   Weinberger v. Salfi, 422 U.S. 749, 761 (1975).

17             In Ill. Council, the Supreme Court refused to "accept a distinction that limits the scope of

18   [Section] 405(h) to claims for monetary benefits."  529 U.S. at 14.  Therefore, even claims seeking

19   non-monetary remedies are said to arise under the Social Security Act.  Plaintiff's attempt to

20   distinguish Ill. Council because it sought to interpret Section 405(h) as incorporated in the Medicare

21   Act, is unavailing.  "Claims for money, claims for other benefits, claims of program eligibility, and

22   claims that contest a sanction or remedy . . . may all similarly dispute agency policy determinations,

23   or may all similarly involve the application, interpretation, or constitutionality of interrelated

24   regulations or statutory provisions. There is no reason to distinguish among them in terms of the

25   language or in terms of the purposes of [Section] 405(h)."  Id.  Based on this explicit reasoning,

26   there is no reason to believe the analysis would have been different in the context of the Social

27   Security Act.  The statutory language and, therefore, the Supreme Court's conclusion, applies

28

equally to either case.  See, e.g., Davis v. Astrue, 513 F. Supp. 2d 1137, 1144 n.1 (N.D. Cal. 2007) (Patel, J.).

Plaintiff cites a Ninth Circuit case that found that district courts did have Section 1331 jurisdiction over Rehabilitation Act challenges to actions of the Social Security Administration. See J.L. v. Social Sec. Admin., 971 F.2d 260, 263 (9th Cir. 1992).  The facts of that case closely parallel those in plaintiff's complaint, as do the legal arguments.  Be that as it may, the more recent authority of Ill. Council compels the court to reject plaintiff's position, as it did in Davis, 513 F. Supp. 2d at 1145.  Given plaintiff's recent motion to consolidate his case with Davis, the court commends the rulings in that action to plaintiff's attention.  The court's reasoning for Davis' claim applies with equal force to Doe.  To proceed with these claims in this court Doe must show that he has complied with the exhaustion requirements set forth in Section 405(g).

B.      Exhaustion of Administrative Remedies

The Social Security Act permits judicial review only after "a final decision of the Commissioner of Social Security."  42 U.S.C. § 405(g).  Plaintiff currently has two separate proceedings pending before the Social Security Administration, one appealing the reduction of his benefits and another alleging discrimination because of his mental disability.  Because a final decision has not issued in either proceeding, defendant maintains that the court lacks jurisdiction under Section 405(g).

As Ill. Council has made clear, plaintiff must meet the exhaustion requirement with respect to the instant action before the court, i.e. his civil rights case based on the Rehabilitation Act.  529 U.S. at 14.  However, he need not meet the exhaustion requirement with respect to a claim that is not now before the court, such as his benefits appeal, if that claim is severable from his civil rights case and a final judgment in that collateral claim would in no way influence the merits of his civil rights complaint, as discussed below.

(i)      Severability of Plaintiff's Benefits Appeal

Plaintiff does not dispute that his benefits appeal has not been exhausted.  See Docket No. 10, Stella Dec. ¶ 3 (confirming that plaintiff's benefits appeal is pending before an administrative

8

United States District Court

For the Northern District of California

law judge).  Nor need it have been, since plaintiff does not seek a court decision reinstating his

benefits.  Therefore, should the court find that his civil rights claim can be separated from his

benefits appeal, it is within its power to sever or waive the requirement that he seek a final decision

on his benefits claim.

Waiver of the exhaustion requirement is proper when the claim to be reviewed is "(1)

collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal

to grant the relief sought will cause an injury which retroactive payments cannot remedy

(irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)."

Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989) (internal quotations omitted).  Plaintiff must

satisfy all three elements in order to qualify for the waiver. See Kaiser v. Blue Cross of Ca., 347

F.3d 1107, 1115-16 (9th Cir. 2003) (finding collaterality but denying waiver because irreparability

and futility were not met).

With regard to the first prong, the Supreme Court has found that a claim that a policy failed

to follow applicable regulations is purely collateral to a claim for benefits.  City of New York v.

Bowen, 476 U.S. 467, 483 (1985).  "A plaintiff's claim is collateral if it is not essentially a claim for

benefits."  Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993).  Like the plaintiff in Johnson, Doe

does not seek reinstatement of his benefits through the present action, but rather mounts a

constitutional and statutory challenge to one of the substantive policies of the Social Security

Administration.  See id.  Plaintiff's complaint alleges, in some detail, that defendant has

implemented policies that place all mentally disabled individuals at a disadvantage by failing to train

Social Security Administration personnel, ignoring medical evaluations, using a mechanistic method

of determining cessation of eligibility that disregards the particular circumstances of the mentally

disabled, and, through its notices, increasing the beneficiaries' suffering rather than informing them

effectively of adverse administrative action.  Nowhere in the complaint can a claim for benefits be

found.[3]  This is a facial challenge to defendant's policies, not to the way they were applied to the

plaintiff's case or to his appeal.

United States District Court

For the Northern District of California

1    With regard to the second prong of irreparability, when "back payments cannot erase either

2    the experience or the entire effect of" the alleged injury, a plaintiff has a colorable claim of

3    irreparable harm. <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1083 (9th Cir. 2003). "A colorable claim of

4    irreparable harm is one that is not wholly insubstantial, immaterial, or frivolous." <u>Id.</u> (internal

5    quotations omitted). In addition to economic hardship, already identified by the Ninth Circuit as

6    irreparable, see <u>id.</u>, defendant's actions allegedly cause plaintiff severe anxiety, psychotic episodes,

7    and hallucinations that may have permanently impaired his mental stability and cognitive functions.

8    <u>See</u> Compl. ¶¶ 62-66 (vividly describing plaintiff's hallucinations that the Social Security

9    Administration was "coming to get him" and he would be rendered homeless as a result). Payment

10   of benefits cannot reverse this harm. Plaintiff has easily exceeded the minimal requirement of

11   pleading a colorable claim of irreparable harm.

12   Defendant questions this analysis by pointing out that plaintiff has not specified any

13   improper or unnecessary notice and by distinguishing "recalling" past hallucinations from

14   anticipating future such episodes — a semantic difference. Plaintiff does not allege improper or

15   unnecessary notice because that is not the point of his complaint: he is not claiming that defendant

16   sent him notices in violation of defendant's policies, but that defendant's policies violate the

17   Constitution, the Rehabilitation Act, and a number of federal regulations. Once more, defendant

18   mistakes a facial challenge for an as-applied claim.

19   Lastly, the court considers the issue of futility. "The exhaustion requirement allows the

20   agency to compile a detailed factual record and apply agency expertise in administering its own

21   regulations", conserving judicial resources and allowing the agency to correct its own errors.

22   <u>Johnson</u>, 2 F.3d at 922. But "when the agency applies a 'systemwide policy' that is 'inconsistent in

23   critically important ways with established regulations,' nothing is gained 'from permitting the

24   compilation of a detailed factual record, or from agency expertise.'" <u>Id.</u>, quoting <u>City of New York</u>,

25   476 U.S. at 485. Like the Ninth Circuit in <u>Johnson</u>, this court is able to decide a straightforward

26   statutory challenge without the benefit of the agency's expertise. <u>See id.</u> Likewise, a more detailed

27   factual record concerning plaintiff's individual circumstances is likely to do little to cast any

28

10

**United States District Court**
For the Northern District of California

1   additional light on either the Constitution or on Congress's intent in the Rehabilitation Act.

2   Exhaustion of plaintiff's benefits appeal would be futile to his present claim.

3   Defendant's reliance on Ill. Council is misplaced here.  In that case, the Supreme Court was

4   addressing the applicability of the exhaustion requirement to claims seeking non-monetary relief and

5   not when or whether such requirements may be waived.  By contrast, here the question is whether

6   the administrative remedies must be exhausted in plaintiff's benefits appeal, which is not even

7   before this court, before plaintiff can bring his civil rights case before this court.  The fact remains

8   that even if defendant reversed its earlier decision and reinstated plaintiff's benefits, plaintiff would

9   still have a valid cause of action in federal court, assuming that he has met the exhaustion

10  requirement with respect to his civil rights claims.  How defendant's policies were applied in this

11  particular case has no bearing on whether such policies are illegal or not.

12  In sum, plaintiff's Rehabilitation Act and constitutional claims are sufficiently distinct and

13  severable from his underlying benefits appeal.  Accordingly, the court hereby waives the requirement

14  that plaintiff have exhausted his administrative remedies in the benefits appeal before he may pursue

15  his civil rights claims.

16  (ii)      Plaintiff's Civil Rights Claims

17  The parties have conflicting views about the exhaustion of plaintiff's remedies to his civil

18  rights claims.  Again, it is undisputed that the administrative civil rights complaint plaintiff filed on

19  February 24, 2009, is still pending.  See Docket No. 11, O'Connor Dec. ¶ 3 (confirming that

20  plaintiff's civil rights complaint has been under review by the Social Security Administration's

21  Office of the General Counsel).  Plaintiff nevertheless claims that he has exhausted his

22  administrative remedies as an unnamed plaintiff in a class of individuals that was the subject of a

23  final decision in an administrative class action concluded on July 27, 2006.  See Docket No. 20,

24  Bruce Dec. ¶¶ 2-6 (describing the sequence of decisions in administrative class actions filed by

25  named plaintiffs Davis and Gibler).

26  When an individual brings both constitutional and statutory challenges to the policies of the

27  Social Security Administration, the constitutional claims are not subject to an administrative

28

exhaustion requirement.  Salfi, 422 U.S. at 765 (finding that disposing of constitutional claims is "a matter which is beyond [the Commissioner's] jurisdiction to determine").  Plaintiff's Due Process claim is, therefore, exempt from the exhaustion requirement, leaving only his Rehabilitation Act claim in question, which the court addresses below.[4]

Before an individual may file a claim arising under the Social Security Act in district court, he must obtain a "final decision of the Commissioner of Social Security made after a hearing to which he was a party" and must commence his civil action "within sixty days after the mailing to him of notice of such decision."  42 U.S.C. § 405(g).  The Supreme Court has interpreted the "final decision" requirement to include three elements: (1) a requirement, not waivable by the Commissioner, that a claim be presented; (2) a requirement that the administrative review procedures be exhausted, waivable either by action of the Secretary or through a court-imposed waiver; and (3) that the complaint in district court meet the sixty-day filing deadline.  Mathews v. Eldridge, 424 U.S. 319, 328 (1976), Salfi, 422 U.S. at 763-76.

The first non-waivable requirement, that plaintiff present his claim to the Commissioner prior to commencing a civil action, "is satisfied once the Secretary has had an opportunity to act and benefits have actually been terminated."  Lopez v. Heckler, 713 F.2d 1432, 1439 (9th Cir. Cal. 1983) (noting that substantial authority supported this view); accord Mathews v. Diaz, 426 U.S. 67, 75 (1976) (finding that the plaintiff had satisfied the requirement when he filed an application for benefits after he became a party to the suit), Jones v. Califano, 576 F.2d 12, 18 (2d Cir. N.Y. 1978) (finding that "by filing claims with the SSA, [plaintiffs-appellants] have satisfied the non-waivable requirement"). In the present case, plaintiff has met the non-waivable requirement by filing a civil rights complaint with the Office of the General Counsel for the Social Security Administration on February 27, 2009, and an Assistant Regional Counsel reviewed his claim.  See Docket No. 11, O'Connor Dec. ¶¶ 1, 3.  He then brought the present action on March 3, 2009, and this motion is being considered more than five months later.  His benefits had already been reduced to zero.  See Docket No. 20, Exh. 5 at 1 (letter from the Social Security Administration to plaintiff informing him of the reduction of his benefits).

United States District Court

For the Northern District of California

Where the legal challenge to the Social Security Administration's policies is statutory, rather than constitutional, defendant has the authority to decide it, subject to judicial review, thus forming the basis for the second waivable requirement that administrative remedies be exhausted before bringing a civil action.  "The test for exhaustion of a statutory issue in an individual case . . . should be whether the Secretary has taken a final position on that issue."  Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 346 (3d Cir. 1977).  Accord Jones v. Califano, 576 F.2d at 19 (2d Cir. 1978) (agreeing with the Third Circuit that a "final position" may amount to "a final decision").  The Ninth Circuit has adopted this test as well.  Livermore v. Heckler, 743 F.2d 1396, 1405 (9th Cir. 1984) (following the Third Circuit's reasoning in holding that in "a question of statutory interpretation in which the [Commissioner] has taken a final position on an issue, . . . further administrative appeals would be futile").

Plaintiff contends that the administrative remedies available for his civil rights claim were exhausted when defendant reached a decision in a purported administrative class action ("ACA") to which Doe was an unnamed plaintiff.  The purported ACA was styled as "Davis, Gibler, and Similarly Situated Individuals v. Social Security Administration" and took the form of a letter from plaintiffs counsel to defendant's Office of the General Counsel dated September 21, 2005.  See Docket No.  20, Bruce Dec., ¶ 2.  Defendant's Office of the General Counsel issued final decisions in this dispute on July 27, 2006.  Id. at ¶ 5.

"There is no provision for class relief in the administrative process under SSI-Title XVI." Jones v. Califano, 576 F.2d at 19.  The parties do not cite references to, and the court is not aware of, a class action administrative remedy in the context of Social Security claims.  Its notice requirements are unknown; its preclusive effects unclear.  The court does not need to address here whether the purported ACA made Doe a party to Davis's complaint.  Under Livermore v. Heckler, the requirement is met because defendant's decision with respect to Davis's claim was a final position on the merits of the civil rights complaint both Davis and Doe share.

While Livermore v. Heckler applied the "final position" test to multi-party actions, where one plaintiff had exhausted his remedies and obtained a final decision and other co-plaintiffs were

13

only at the early stages of administrative review, the court sees no reason why the same test would be inapplicable to the present case.  Davis's and Doe's civil actions are contemporaneous and subject to a motion to consolidate, the parties are represented by the same counsel in both suits, and defendant had due notice that its final decisions in Davis's and Gibler's complaints would apply to a larger group of individuals.

Moreover, any claim that defendant's final decisions depended on Davis's or Gibler's individual circumstances would be fanciful.  The two letters share exactly the same content, with the exception of three additional paragraphs that defendant's Office of the General Counsel devotes to explaining why it believed Gibler's complaint was not timely.  See Docket No. 20, Exh. 3A & 3B. In what must have been an attempt to put substance over form, defendant's letter to Gibler further indicates that the Office of the General Counsel considered Gibler's substantive argument, and then proceeds to reiterate, to the letter, the second half of the Davis decision.  See Docket No. 20, Exh. 3B, at 2.  Defendant's identical treatment of the two claims makes no mention of the significantly different personal circumstances of the two petitioners that defendant's own inquiry had earlier revealed.  Compare Docket No. 20, Exh. 2A (Davis "findings of fact") with Docket No. 20, Exh. 2B (Gibler "findings of fact").  If anything, defendant's own actions have demonstrated that defendant does not rely on determinations of fact in reaching its final decisions in civil rights claims of the type Davis and Gibler filed.  Since Doe's challenge is nearly identical, there is no reason to believe that defendant would reach a different final decision.

There is also a strong indication that despite its current protestations about plaintiff's failure to exhaust all administrative remedies, defendant has more or less acknowledged that a third review of the same civil rights claims would not yield in Doe's case a result any different from the ones that it did with respect to Davis's and Gibler's complaints.  See Diaz, 426 U.S. at 76 (finding that the Social Security Administration had waived the exhaustion requirement, despite its later insistence that plaintiff had not exhausted his administrative remedies, when it conceded at oral argument that the case was probably ripe for summary judgment).  When the plaintiff in Davis, formerly a class action now also before this court, attempted to include Doe as a named plaintiff, defendant made no

14

1   mention about Doe's purported failure to exhaust his administrative remedies.  See Federal

2   Defendant's Opposition to Motion for Leave to Amend Second Amended Complaint (Jan. 18, 2008),

3   Docket No. 66, Case No. CV 06-6108.

4        Finally, the sixty-day filing requirement is inapplicable here, since Doe received no notice of

5   defendant's decision in Davis's and Gibler's cases.  "Where the purpose of the sixty day rule is to

6   forestall the filing of belated or stale claims, it is not so compelling in [an] action like this one based

7   on a challenge to a policy of the Secretary which applies in the same manner to all litigants."

8   Kennedy v. Harris, 87 F.R.D. 372, 377 (S.D. Cal. 1980) (noting a similar practice is Title VII

9   employment discrimination cases).  See also Owens v. Heckler, 1984 WL 62779, *5 (C.D. Cal. Aug.

10  28, 1984) (finding "section 405(g) action, in which a plaintiff is required to initially resort to

11  administrative remedies, [to be] analogous to actions brought under Title VII, which has a similar

12  procedural scheme).

13       The court concludes that because (1) plaintiff has already filed an administrative action

14  alleging civil rights violations, (2) defendant has already issued a final position on the same

15  substantive claim, and (3) the sixty-day filing deadline does not apply to individuals in plaintiff's

16  situation, plaintiff has satisfied the requirement present in Section 405(g) that he proceed with a civil

17  action only after a final decision of the Commissioner.

18       To summarize, plaintiff's present civil rights action is separable from his benefits appeal and

19  does not require him to have exhausted all administrative remedies in that separate case.  Plaintiff's

20  civil rights claim does require exhaustion but plaintiff has already met this condition.  Finally,

21  plaintiff's constitutional claim does not require administrative exhaustion, since defendant's

22  jurisdiction does not extend over constitutional challenges to its policies.  Accordingly, the court has

23  subject matter jurisdiction in this action pursuant to 42 U.S.C. section 405(g).

24       C.    Mandamus Jurisdiction Under 28 U.S.C. Section 1361

25       Like the plaintiff in Davis, plaintiff also asserts that this court has subject matter jurisdiction

26  pursuant to 28 U.S.C. section 1361, which provides that "district courts shall have original

27  jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United

28

United States District Court
For the Northern District of California

15

States or any agency thereof to perform a duty owed to the plaintiff."  Mandamus is an "extraordinary remedy," and is only available where "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (internal quotations omitted).

In ruling that mandamus is sometimes appropriate in Social Security cases, the Supreme Court indicated that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. [section] 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616 (1989).

Plaintiff requests an order, presumably a writ of mandamus, requiring defendant to comply with the Rehabilitation Act and the United States Constitution.  Plaintiff's request is clearly beyond the scope of mandamus jurisdiction.  It is by no means self-evident that plaintiff's claims are clear and certain; in fact, if the range of issues encompassed by this decision is any indication, plaintiff's claims are complex and likely to require careful and sustained litigation.  Further, defendant's duty does not appear to be so free from doubt and so plainly ministerial as to compel the issuance of a writ of mandamus.  Lastly, plaintiff's remedies, which include injunctive and declaratory relief, are far from inadequate vehicles for accomplishing plaintiff's purpose should he prevail.  Accordingly, plaintiff may not proceed with his Rehabilitation Act and constitutional claims based on mandamus jurisdiction.  See Davis, 513 F. Supp. 2d at 1147; see also Laurie Q. v. Callahan, 973 F. Supp. 925, 933 (N.D. Cal. 1997) (Patel, J).

D.      Standing

To establish Article III standing, a plaintiff must show that

(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

16

1    Plaintiff is currently awaiting an administrative appeal of defendant's decision to reduce his

2    SSI benefits to zero.  Should the outcome of that appeal prove favorable to plaintiff, there would be

3    no "injury in fact" of a monetary nature.  Plaintiff's monetary injury is concrete and particularized,

4    but is also hypothetical.

5    Plaintiff, however, goes on to further allege that he was subject to intense stress and anxiety,

6    which, given his precarious mental condition, is both actual and imminent.  As a result, plaintiff's

7    health has allegedly deteriorated and his ability to live independently seriously compromised.  These

8    psychological problems constitute an "injury-in-fact" for the purposes of Article III standing.  See

9    Situ v. Leavitt, 2006 WL 3734373, *4 (N.D. Cal. Dec. 18, 2006) (Henderson, J.) (holding that

10    "evidence regarding [p]laintiffs' actual anxiety and distress" distinguished that case from those

11    involving "hypothetical, speculative or other possible future injuries [that] do not count in the

12    standing calculus") (internal quotations omitted).  Plaintiff alleges there is no reason to expect

13    defendant would desist from its procedures, which defendant indirectly acknowledges by stating its

14    belief that the notices were both necessary and proper.  Thus, plaintiff's alleged injuries were

15    directly traceable to defendant's conduct.  A decision of this court, granting plaintiff's prayer for

16    declaratory and injunctive relief, would prevent Social Security beneficiaries, including plaintiff,

17    from experiencing this form of injury in the future.

18    Accordingly, plaintiff has satisfied the conditions for standing in this action.

19    II.    Failure to State a Claim

20         A.    Pleading Standard

21    Federal Rule of Civil Procedure 8(a) instructs that a pleading contain "a short and plain

22    statement of the claim showing that the pleader is entitled to relief."  While the rule does not require

23    "detailed factual allegations," Twombly, 550 U.S. at 555, "it demands more than an unadorned,

24    the-defendant-unlawfully-harmed-me accusation," Iqbal, 129 S. Ct. at 1949.  A complaint that rests

25    on labels, conclusions, and "formulaic recitation[s] of the elements of a cause of action" fails this

26    pleading standard.  Twombly, 550 U.S. at 555.

27

28    17

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

The Supreme Court has suggested a two-step approach to evaluating a complaint.  First, the court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Iqbal</u>, 129 S. Ct. at1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  Second, while the remaining "well-pleaded factual allegations" are assumed to be true, the reviewing court must still "determine whether they plausibly give rise to an entitlement to relief."  <u>Id.</u>  If the well-pleaded facts support a more persuasive, and likely benign, "obvious alternative explanation" for the defendant's actions, a claim is not plausible.  <u>Twombly</u>, 550 U.S. at 567.  If, in fact, the court may only infer the "mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  <u>Iqbal</u>, 129 S. Ct. at1950 (internal quotations omitted).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> (internal quotations omitted).

### B.    Statute of Limitations

At the outset, the court considers defendant's threshold allegation that the statute of limitations prevents plaintiff from bringing his Rehabilitation Act claim.

Section 504 of the Rehabilitation Act does not contain a statute of limitations, but the Supreme Court has instructed district courts to borrow the statute of limitations from an analogous cause of action under state law.  <u>Bd. of Regents v. Tomanio</u>, 446 U.S. 478, 484 (1980) (noting that Congress clearly instructed district courts to look to state law for a statute of limitations applicable to actions brought under 42 U.S.C. section 1983).  The Ninth Circuit has analogized Section 504 actions to personal injury claims.  <u>Alexopulos v. San Francisco Unified School Dist.</u>, 817 F.2d 551, 554 (9th Cir. 1987).  The California statute of limitations for personal injury claims is now two years.  <u>See</u> Cal. Code Civ. Pro. § 335.1.  That statute of limitations is tolled if the plaintiff is under the age of majority or mentally disabled, for the duration of the disability.  <u>See</u> Cal. Code Civ. Pro. § 332.  Absent tolling, the statute of limitations begins to run "when a plaintiff knows or has reason to know of the injury that is the basis of the action."  <u>Alexopulos</u>, 817 F.2d at 555.  "The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of

United States District Court

For the Northern District of California

1    discrimination would have been apparent to a similarly situated person with a reasonably prudent

2    regard for his rights."  <u>Boyd v. United States Postal Service</u>, 752 F.2d 410, 414 (9th Cir. 1985).

3    Plaintiff received his latest SSI notice from defendant in August 2007.  <u>See</u> Docket No. 20,

4    Exh. 4 (letter informing Doe that his benefits had been reduced to zero).  While plaintiff had

5    received similar notices prior to this time, the August 2007 notice clearly constitutes an adequate

6    basis for plaintiff's action, within the two-year time limit.  Moreover, plaintiff's abilities to

7    comprehend the nature of notices and respond promptly to them was greatly reduced at the time,

8    which is, after all, one of his main causes of complaint against defendant.  Since defendant's own

9    examiner diagnosed Doe as suffering from "mental retardation," it is strange indeed that defendant

10   would now claim that plaintiff's claim is time-barred based on the same statute of limitations

11   applicable to non-disabled individuals.  Lastly, it is entirely conceivable that a reasonably prudent

12   individual, with a mental disability, would not connect his diminishing benefits to a legal cause of

13   action until they ceased completely, and even then only after having consulted with counsel.

14   The court finds that plaintiff's claim under the Rehabilitation Act was timely filed.  The court

15   now turns to defendant's objections to plaintiff's claims on jurisdictional and pleading grounds.

16   C.    Rehabilitation Act Claim

17   The Rehabilitation Act clearly lists the elements necessary to assert a claim of

18   discrimination: The plaintiff must be disabled and otherwise qualified to receive benefits, and must

19   have been "excluded from the participation in, be denied the benefits of, or be subjected to

20   discrimination" under any program or activity receiving federal financial assistance.  29 U.S.C. §

21   794.  Further, the Ninth Circuit has held that the Rehabilitation Act requires programs or agencies

22   receiving federal financial assistance to "consider the particular needs of disabled" individuals and

23   provide them with "meaningful access" to the benefits to which they are entitled.  <u>Armstrong v.</u>

24   <u>Davis</u>, 275 F.3d 849, 862 (9th Cir. Cal. 2001) (rejecting policies that failed to "address the needs of

25   prisoners or parolees who have problems understanding complex information or communicating

26   through the spoken or written word").

27

28
                                                    19

United States District Court

For the Northern District of California

1    Plaintiff has properly stated the facts necessary to support his claim, which are entitled to a

2   presumption of truth at this stage of the proceedings.  Plaintiff has alleged he is disabled, within the

3   meaning of the Social Security Act, as evidenced by defendant's own evaluations.  Compl. ¶ 8.

4   Plaintiff has also alleged he is otherwise qualified to receive benefits, a factual assertion which is

5   beyond the scope of a motion to dismiss.  Id.  ¶¶ 37-38.  If defendant was correct, and this assertion

6   would not be entitled to a presumption of truth, no claim could ever be brought by a wronged

7   beneficiary of a government program unless the government agreed not to raise the issue of

8   eligibility in a motion to dismiss.  This is plainly not the proper function of Rule 12(b)(6).  Further,

9   plaintiff has correctly alleged that he was denied the benefits to which he was entitled and

10  discriminated against in the course of his participation in SSI.  Id. ¶¶ 34-35.  Lastly, plaintiff has

11  alleged, and defendant does not dispute, that defendant is one of the programs or agencies that fall

12  under the scope of the Rehabilitation Act.

13    As a result, under the first prong of the Iqbal procedure, plaintiff has pleaded enough facts to

14  have a cognizable claim under the Rehabilitation Act.  The court now considers the plausibility of

15  that claim under the current Supreme Court standard.

16    Plaintiff's principal claim is one that defendant appears intent to conveniently ignore or

17  misconstrue:  This is not a claim for reinstatement of benefits, nor is it a claim that discrimination

18  occurs because the rate at which mentally disabled beneficiaries are being terminated is considerably

19  higher than their share of the population of generically disabled beneficiaries.  Thus the objections

20  raised in Alexander v. Choate, 469 U.S. 287 (1985), are inapposite to plaintiff's instant claims,

21  because plaintiff does not seek equal results, but merely equal treatment as implied by the right to

22  "meaningful access."

23    Instead, plaintiff alleges that he was wrongfully denied benefits and has suffered additional

24  injuries due to defendant's failure to adequately evaluate the needs of mentally disabled persons,

25  both at the notice stage, but also during periodic eligibility reviews.  Defendant offers the alternative

26  explanation that plaintiff's earnings simply disqualified him from receiving further SSI benefits.

27  Given defendant's aversion to considering the possibility that its own rules deny the mentally

28

United States District Court
For the Northern District of California

disabled proper consideration during the review process and noting defendant's predilection for circuitous arguments in its final decisions in civil rights administrative complaints, the alternative explanation advanced by defendant is hardly obvious, not to mention plausible.[5]

Plaintiff alleges that expenses related to his disability, such as job coaches and payments to assistance providers, are never reflected in the review process, due to defendant's poor training of its employees, who are unaware of the specific needs of mentally disabled beneficiaries. See Compl. ¶¶ 42, 28, 35. Furthermore, plaintiff alleges that defendant's notices are incomprehensible to the mentally disabled and are accompanied by onerous deadlines. Id. ¶ 26. Since defendant is aware of plaintiff's mental disability, it would be possible to tailor the notice procedures to meet plaintiff's needs. Id. ¶¶ 119-120. Plaintiff's theory, despite being pleaded in a less than satisfactory manner, is entirely plausible. Defendant's motion to dismiss the Rehabilitation Act claim is denied.

D.    Due Process Claim

Plaintiff alleges that defendant has violated his due process rights by denying him a "meaningful opportunity to comprehend and respond to [d]efendant's notices." Compl. ¶ 119. Defendant is quick to point out the Supreme Court's holding that Social Security beneficiaries are not constitutionally entitled to a hearing prior to the termination of their benefits. Mathews v. Eldridge, 424 U.S. 319, 339-340 (1976). Defendant then goes on to misread the Supreme Court's decision in Schweiker v. Chilicky, 487 U.S. 412 (1988), as barring a due process claim even if benefits were erroneously terminated. If defendant's interpretation were true, one would be prompted to wonder what exactly forms the substance of a constitutional right to due process, if a property right can be wrongly terminated with unqualified impunity. Fortunately for civil liberties, defendant is incorrect, as Chilicky merely prevented a plaintiff from recovering monetary damages from the government official who improperly terminated his benefits. Id. at 429. Plaintiff requests no monetary damages here. Nor does plaintiff ask for a hearing before his benefits are terminated, so Eldridge is also inapposite.

What plaintiff seems to be alleging is a constitutional right to receiving comprehensible notices. In support of his claim, plaintiff quotes Mullane v. Cent. Hanover Bank & Trust Co., 339

21

U.S. 306, (1950), as requiring "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314.  The right to notice is not always ancillary to the right to be heard; indeed, its function is to inform an interested party that "the matter is pending [so he] can choose for himself whether to appear or default, acquiesce or contest."  Id.

Unfortunately for plaintiff, his complaint stops short of identifying the legal theory or documenting the case law that would fully articulate his due process claim.  Mullane does more than just prescribe a right to notice; it also draws the outer bounds of this right.  Id. at 315.  Plaintiff must clearly trace out a legal theory that explains why the notices he received were "mere gestures," id., performed perfunctorily, rather than "reasonably calculated" to convey their information to him, id. at 314.  Plaintiff must also identify what in the notices caused him distress and what the threshold for causing such distress might be.  In other words, plaintiff must sketch a cognizable legal theory, and support it with facts, that defendant's notices were unreasonable given plaintiff's disability and defendant's awareness thereof. This plaintiff has failed to do.  As currently pled, plaintiff's constitutional right to receive comprehensible notices is entirely too subjective to be maintained.

Accordingly, the court hereby grants defendant's motion to dismiss plaintiff's Due Process claim.  However, the claim is dismissed without prejudice, so as to give plaintiff another opportunity to replead his claim.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED with respect to plaintiff's Rehabilitation Act claim and is GRANTED with respect to plaintiff's Due Process claim.  Should plaintiff choose to do so, he must file an amended complaint within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Dated: August 18, 2009

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1.  The facts described below are taken from plaintiff's complaint, and assumed to be true.  However, mere labels, legal conclusions, and "formulaic recitations of the elements of a cause of action" are not entitled to a presumption of veracity.  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

2.  Paragraph 75 of plaintiff's complaint perfunctorily states "[p]laintiff has exhausted administrative remedies to all claims raised in this action."  The details concerning plaintiff's efforts to comply with the exhaustion requirement are to be found scattered across subsequent submissions, a practice the court emphatically discourages.

3.  Defendant's attempts to distinguish Doe's complaint from Davis's complaint fail to persuade.  The sections of the complaint that defendant references are all allegations of fact, as required by Federal Rule of Civil Procedure 8(a), and not claims for remedies.  Defendant is equally misguided in reading plaintiff's prayer for declaratory relief as a claim of administrative irregularity related to his own benefits.  See Davis, 513 F. Supp. 2d at 1145 (finding collaterality because Davis was not challenging the individualized procedure used in his case or his own payments under defendant's policies).  Like Davis, Doe does not allege that the Social Security Administration wronged him by misapplying its own policies.  Rather, plaintiff has stated, quite clearly in fact, that defendant's policies as a whole are being challenged.  Reading anything else into Davis, such as the extravagant notion that collaterality may not lie outside of the class action context, ignores the basic requirement that named plaintiffs in class actions must have standing, which in turn compels them to plead facts about their individual circumstances.  If defendant's theory were the law, collaterality would never apply.  Indeed, "defendants' construction of Section 405(g) and Section 405(h) 'would not simply channel review through the agency, but would mean no review at all.'"  Am. Council of Blind v. Astrue, 2008 WL 1858928, *6 (N.D. Cal. 2008) (Alsup, J.), quoting Ill. Council, 529 U.S. at 19.
    At the July 27, 2009, hearing on this matter, defendant conceded that the benefits question makes no difference to the plaintiff's Rehabilitation Act claim.  See Docket No. 25, (Transcript of July 27, 2009, Hearing) at 10:11-13 (recording counsel for defendant agreement that "perhaps exhausting [the individual benefit analysis] is not going to make a huge difference in the [c]ourt's analysis of the Rehabilitation Act claim").

4.  The court cannot help but note that in response to a similar complaint filed by Terrence L. Davis and Timothy J. Gibler with defendant's Office of the General Counsel, alleging violations of the Due Process Clause of the Fifth Amendment and the Rehabilitation Act, defendant's final decision addressed only the statutory and not the constitutional elements of the complaint.  See Docket No. 20, Exh. 1 (administrative complaint), Exh. 2A (Davis decision), Exh. 2B (Gibler decision), Exh. 3A (Davis final decision), Exh. 3B (Gibler final decision).

5.  In a letter responding to the civil rights violation claim brought by the plaintiff in Davis, defendant's Office of Legal Counsel rejected the view that its own procedures failed to adequately consider the needs of the disabled at the review stage, in violation of the Rehabilitation Act.  In support of its view, defendant's Office of Legal Counsel noted that "it is not discrimination for SSA to apply the provisions of the Social Security Act, the regulations, and similar materials . . . in the conduct of benefit determinations . . . ."  See Docket No. 20, Exh. 2A (letter to Terrence Davis) at 3.  The essence of the argument appears to be that when defendant is following the law, it is not breaking it.  This argument has failed to work for former United States presidents and vice-presidents and will not be countenanced by this court.