UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE DAVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant.<br>_____/<br>JOHN DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant.<br>_____/ | No. C-06-6108 EMC<br><br>**RELATED TO**<br><br>No. C-09-0980 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY**<br><br>**(Docket No. 211, C-06-6108)**<br>**(Docket No. 126, C-09-0980)** |

The above-referenced cases have been related. In each case, the plaintiff suffers from a mental impairment or a developmental disability. In each case, the plaintiff basically alleges that, in violation of the Rehabilitation Act, the Social Security Administration ("SSA") has failed to offer reasonable accommodations to enable him to participate effectively in its processes. In each case, the plaintiff argues that, to comply with the Rehabilitation Act, "SSA should include training on how to communicate with individuals with mental impairments [or developmental disabilities] and

should modify its standard written communications."[1] Davis Docket No. 229 (Joint CMC St. at 2); *see also* Doe Docket No. 142 (Joint CMC St. at 2-3).

Currently pending before the Court is the SSA's motion to dismiss or stay litigation in favor of administrative proceedings. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to stay.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Terrence Davis initiated his lawsuit in September 2006. *See* Davis Docket No. 1 (complaint). Plaintiff John Doe initiated his lawsuit in March 2009. *See* Doe Docket No. 1 (complaint).

In July 2010, the SSA Commissioner "exercised his discretion to conduct a new self-evaluation of SSA's current policies and practices to measure compliance with Section 504 of the Rehabilitation Act and 45 C.F.R. part 85. The Commissioner's decision was announced to the public via a notice in the Federal Register dated November 5, 2010."[2] Davis Docket No. 232 (Mot. at 8-9). On that same day, the SSA filed a notice in the *Davis* suit and one in the *Doe* suit which advised the Court of the SSA Commissioner's decision to conduct a new self-evaluation. *See* Davis Docket No. 186 (notice). The notice states in relevant part: "The Commissioner will advise the Court of his view of the impact of the self-evaluation on this litigation at an appropriate time." *Id.*

Approximately four months after the public notice of the self-evaluation, *i.e.*, on March 14, 2011, the SSA filed the currently pending motion to dismiss or stay based on the self-evaluation authorized by the SSA Commissioner. *See* Davis Docket No. 211 (motion); Doe Docket No. 126 (motion). The gist of the motion is that a dismissal or a stay is warranted based on prudential exhaustion principles – *i.e.*, in order to give the agency the opportunity to conduct the self-evaluation.

---

[1] The *Davis* case also includes a claim pursuant to the Freedom of Information Act ("FOIA"). *See* Davis Docket No. 229 (Joint CMC St. at 2) (explaining that the information sought is "statistical information regarding cessation of individuals with mental impairments"). The *Doe* case also includes a claim for violation of due process. *See* Doe Docket No. 142 (Joint CMC St. at 3).

[2] Apparently, "SSA received 10 separate comments from individuals and advocacy groups." Davis Docket No. 232 (Mot. at 9); *see also* Davis Docket No. 202 (Sabatino Decl. ¶ 3).

2

1  On August 2, 2011, shortly before the hearing on this motion, the SSA published an
2  additional notice in the Federal Register regarding the self-evaluation. "The notice announced that
3  SSA will be holding a public forum to accept comments about SSA's policies and facilities on
4  August 17, 2011 and another public forum on September 20, 2011 to accept comments about SSA's
5  information technology and communications. The notice also provides that written comments can
6  be submitted to SSA by October 31, 2011." Davis Docket No. 237 (Joint CMC St. at 7).
7  Although, as indicated above, more concrete steps have been taken with respect to the self-
8  evaluation, the SSA admits that no end date has been set as of yet for the self-evaluation. Davis
9  Docket No. 202 (Sabatino Decl. ¶ 7) (attributing this to the "expansive nature" of the self-evluation).
10  The SSA hopes to complete the self-evaluation in less than three years (measured from the inception
11  of the project in the fall of 2010). *See id.*

## II. DISCUSSION

A.  Rule 12(b) Motion v. Motion for Summary Judgment

As a preliminary matter, the Court notes that, as argued by the SSA, the Ninth Circuit has treated a motion to dismiss for failure to exhaust both as an unenumerated motion under Federal Rule of Civil Procedure 12(b) and as a motion for summary judgment. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (unenumerated Rule 12(b) motion); *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 Fed. App. 696 (9th Cir. 2010) (motion for summary judgment). For purposes of this motion, it does not matter how the Court characterizes the SSA's motion. That is because a motion to dismiss for failure to exhaust under Rule 12(b) is similar to a motion for summary judgment in that, for both motions, a "court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1120. Also, even if the Court treats the SSA's motion as a Rule 12(b) motion, the motion is not, as the plaintiffs argue, untimely.

B.  Procedural Objections

In their opposition, the plaintiffs make two procedural objections to the SSA's motion.

First, they argue that the motion is barred because Judge Patel stated at one of the prior hearings that she would not entertain any further motions to dismiss. The Court has reviewed the transcript for that hearing. Based on the Court's review, it concludes that Judge Patel's statement

does not preclude the SSA's motion. When Judge Patel's statement is taken in context, it is clear that she did not want the then-to-be-coordinated cases to be delayed by pleading battles in *Doe* and wanted discovery to move forward. Because these cases have not been held up and have moved into discovery (at least on Phase I issues), Judge Patel's statement is not a bar to the instant motion.

Second, the plaintiffs argue that the SSA's motion is time barred because a Rule 12(b) motion must be made before an answer is filed and the SSA has already filed an answer. Rule 12(b), however, only requires defenses enumerated (1) to (7) to be made before pleading if a responsive pleading is allowed. *See* Fed. R. Civ. P. 12(b). Because a motion to dismiss based on prudential exhaustion is not one of these enumerated defenses, it is not time barred.

Moreover, even if there were a time bar, the plaintiffs admit that, where there is good cause, untimeliness may be excused. *See Underwood v. Knowles*, No. 1:08-cv-00986-GSA-PC, 2010 WL 3505066, at *1 (E.D. Cal. Sept. 7, 2011) (finding good cause to permit filing of Rule 12(b) motion to dismiss for failure to exhaust past the date specified in the court's scheduling order). Here, it was not possible for the SSA to move to dismiss or stay within the normal Rule 12(b) time frame because the decision to do a self-evaluation was not made until July 2010. To the extent the plaintiffs argue that the SSA should have immediately moved for relief once the decision was made, the Court does not agree. As the SSA argues, it was reasonable for the agency to wait until after the self-evaluation became a matter of public record and a full plan for implementation of the self-evaluation was completed. The plaintiffs have not been prejudiced by any delay because no trial date has been set and the parties have been focusing on Phase I issues only (*e.g.*, standing, jurisdiction). In other words, the case has not progressed to such a point that it would be unfair to allow a late motion to dismiss.

C.     Prudential Exhaustion

The SSA argues that, in light of the SSA Commissioner's decision to do a self-evaluation, the case should be dismissed or at least stayed based on exhaustion principles.

Exhaustion here refers to exhaustion of administrative remedies. Where there is no statute mandating exhaustion of administrative remedies prior to filing suit (as here), a court may still require it as a prudential matter. *See J.L. v. Social Sec'y Admin.*, 971 F.2d 260, 271 (9th Cir. 1992)

4

(stating that, "[i]n appropriate cases, the Ninth Circuit has applied a prudential exhaustion requirement in the absence of a statutory mandate for exhaustion of remedies"), *overruled in part by Lane v. Pena*, 518 U.S. 18 (1996); *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990) (noting that, "even if exhaustion of administrative remedies is not statutorily mandated, courts may require it"). "[P]rudential exhaustion requirement is not a jurisdictional prerequisite but instead is within the discretion of the district court." *Id.* Prudential exhaustion may be required where

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.*

In the instant cases, the SSA argues that prudential exhaustion should be required based primarily on *J.L. v. Social Security Administration*, 971 F.2d at 260. In *J.L.*, the plaintiffs alleged that the application procedures for SSI benefits were so complex and demanding that they could not, due to their mental impairments, obtain the payments to which they were entitled. *See id.* at 262. The Ninth Circuit held that, taking into account the above three factors, exhaustion was appropriate.

> (1) The agency's expertise in the administration of the SSI program is essential to a court's understanding of the case. The agency is in the best position to determine what information it needs to make eligibility decisions and to evaluate what burdens would be imposed upon whom by different methods of gathering information. (2) The administrative scheme established in 45 C.F.R. § 85 was constructed to assure that the Department of Health and Human Services (of which SSA is a part) conforms to the demands of the Rehabilitation Act in its administration of federal programs. If this suit, which directly implicates the manner in which the Department administers a federal program, is allowed to proceed without reference to 45 C.F.R. § 85, it might inappropriately encourage deliberate bypass of the administrative scheme in other cases. (3) The remedy that plaintiffs seek is the adoption and implementation by SSA of new application procedures. SSA's involvement and input will be indispensable toward that end. Plaintiffs have made no showing that their needs could not be satisfied through an administrative procedure. On the contrary, SSA's counsel explained at oral argument that claimed needs of deaf SSI applicants had been accommodated through the administrative process. On the record before us, we have no reason to believe that SSA, given the impetus of a complaint filed pursuant to HHS regulations, would not develop appropriate application procedures for these plaintiffs without the intervention of the court.

*Id.* at 271.

    *J.L.* is instructive case because it applied the three prudential exhaustion factors in the context of a claim (as here) that the SSA was violating the Rehabilitation Act through its policies and procedures. The plaintiffs argue, nevertheless, that the case is distinguishable because, in discussing exhaustion, "the Ninth Circuit in *J.L.* referenced the [discrimination] complaint procedures in 45 C.F.R. §§ 85.61 and 85.62, *not* the self-evaluation regulation [*i.e.*, § 85.11]." Davis Docket No. 216 (Opp'n at 10) (emphasis in original).

    The plaintiffs' argument is not without some merit. When exhaustion of remedies is at issue, typically there is a regulation such as § 85.61 that must be followed before a suit may be filed in court. *See* 45 C.F.R. § 85.61 (providing procedures for filing administrative complaints, deciding such complaints, taking appeals of administrative decisions, etc.). But ultimately the difference identified by the plaintiffs is not dispositive. The prudential exhaustion doctrine is based on the policies underlying exhaustion. As the Ninth Circuit noted: "'Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.'" *J.L.*, 971 F.2d at 265. If those policies are promoted by the application of a regulation, then it applies not only where there is a regulation that spells out specific administrative complaint procedures or a more amorphous regulation like the self-evaluation regulation.

    That being said, because a different regulation is at issue in these cases, *J.L.* is not dispositive, and the three prudential exhaustion factors must be independently considered with respect to the cases at bar.

    At this juncture in the proceedings, the Court finds that the three factors above weigh slightly in favor of exhaustion, that is, so long as there is a substantial likelihood that the self-evaluation will in fact address the specific concerns raised by the plaintiffs here – *i.e.*, how to improve the way the SSA communicates with persons with mental impairments or development disabilities.

    With respect to the first factor, the plaintiffs here – like the plaintiffs in *J.L.* – are seeking systemic change, and the SSA would be "in a far better position to determine how best to formulate

and implement systemic change than is a court." *Id.* at 265.  Moreover, "the necessary insight into the operations of the agency is more likely to be generated in useful form through an administrative proceeding than through the adversarial clash of interrogatories, depositions and document productions." *Id.* at 270.

In their papers, the plaintiffs point out that the SSA does not have any expertise in the Rehabilitation Act such that it should not be relied upon to develop proper remedies.  *See* Davis Docket No. 216 (Opp'n at 12) (noting that, in *J.L.*, the Ninth Circuit noted that the SSA claimed no special expertise with respect to the Rehabilitation Act[3]).  While the SSA may not have any expertise in the Act, it does have expertise about its operations and the administration of the Title II and XVI programs.  Similar considerations led the Ninth Circuit in *J.L.* to conclude that the first prudential exhaustion factor weighed in favor of requiring exhaustion.  The fact that the lawsuit involves the application of legal principles over which the Court has as much if not more expertise than the agency, while informing the balance, does not overcome the balance on this factor which weighs slightly in favor of exhaustion.

As for the second factor, if the Court were to allow the plaintiffs' cases to proceed in spite of the self-evaluation, then other claimants might be encouraged not participate in the self-evaluation as well.

Finally, regarding the third factor, the Court acknowledges that, at the administrative level, the SSA rejected the plaintiffs' discrimination complaints (each raising Section 504 violations) as well as discrimination complaints made by third parties (also raising similar Section 504 violations).  But these decisions made by lower-level agency officers have less force now that the SSA Commissioner himself has decided that the self-evaluation is necessary.  *Cf. Martin v. Banks*, No. CV 10-5841 PA (FFM), 2011 U.S. Dist. LEXIS 72546, at *8-9 (C.D. Cal. June 1, 2011) (rejecting the argument that it would have been futile for the petitioner to appeal the warden's decision, in part because "there is no reason to believe with any degree of certainty that either the regional director or

---

[3] The Ninth Circuit noted that the SSA did not have any special expertise with respect to the Rehabilitation Act in addressing the *J.L.* plaintiffs' concern that, if they were to sue under the APA, "they would face the more difficult burden of showing that SSA's actions were 'arbitrary, capricious [or] an abuse of discretion.'" *J.L.*, 971 F.2d at 267.

the general counsel would have reached the same conclusion as did the warden" since the petitioner's claim required an individualized assessment of several factors). Thus, this case is different from those where courts have noted that resort to agency procedures would be futile "when an agency . . . has made known that its general views are contrary to those of the complainant, and *has never given an inkling that it would consider a matter afresh.*" *Mt. Clemens v. United States EPA*, 917 F.2d 098, 915 (6th Cir. 1990) (internal quotation marks omitted; emphasis added); *Cutler v. Hayes*, 818 F.2d 879, 891 (D.C. Cir. 1987) (internal quotation marks omitted; emphasis added). On the other hand, while the SSA has indicated its self-evaluation is intended to encompass accommodations of both physical and mental disabilities, it is not yet clear whether it intends to address the specific issues raised by the plaintiffs' complaints herein.

The Court thus finds, based on the above, that the balance tips in favor of requiring prudential exhaustion.

The Court, however, shall not dismiss the case with prejudice as the Ninth Circuit did in *J.L.* Nor shall the Court permit an indefinite stay, as suggested by the SSA.[4] Multiple considerations counsel against both of these approaches. For example, it is not yet clear whether adequate notice of the self-evaluation was given to persons with mental impairments or developmental disabilities or to persons or groups that advocate on their behalf. Also, as noted above it is not yet clear whether the self-evaluation will address the particular concerns raised by the plaintiffs here. The balance of factors presents a closer case than in *J.L.* In addition, the self-evaluation has no concrete end date. Finally, there is the possibility that the plaintiffs may need to obtain some sort of immediate relief in order to meaningfully participate in the administrative process before the SSA regarding their benefits.

Taking into account these considerations, the Court concludes that a limited stay is the most appropriate course to take at this juncture. More specifically, the Court shall stay the instant cases until December 23, 2011. This limited stay will give the SSA an opportunity to demonstrate that, at

---

[4] The SSA is not asking for a *Landis* stay, *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936), but rather is asking for a stay in lieu of a dismissal as a "lesser sanction." *See Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC*, 665 F. Supp. 2d 1189 (D. Haw. 2009).

8

the very least, the self-evaluation it has undertaken will actually address the issues identified by the plaintiffs in these lawsuits and that there will be meaningful participation by persons with mental impairments or development disabilities or persons or groups that advocate on their behalf. The SSA should be able to make some showing as to these issues, even with a limited stay, because by December 23, the SSA will have held two public fora related to the self-evaluation (including on SSA's information technology and communications) and a public comment period will have been completed. The SSA is forewarned that, if it fails to make an adequate showing, then the Court will likely lift the stay and permit the instant cases to proceed on the merits.

Notwithstanding the stay, the Court shall require the SSA to produce to the plaintiffs, as a part of this litigation, documents related to its pursuit of the self-evaluation such that the plaintiffs will also be able to evaluate whether the SSA's self-evaluation is truly an attempt to address their concerns. While the Court shall not at this juncture prejudge whether a document is appropriately withheld on the basis of a privilege, it emphasizes that it expects the SSA to act in the spirit of cooperation and that any claimed privilege will mitigate against exhaustion and a further stay.

### III.  CONCLUSION

For the foregoing reasons, the Court grants the SSA's motion to stay the proceedings in the cases based on prudential exhaustion. The Court shall stay proceedings until December 23, 2011.

On December 23, 2011, at 9:00 a.m., the Court shall hold a further status conference in the cases to address whether the stay should be continued or lifted. One week prior to the conference, the parties shall file a joint case management conference statement addressing this issue. To ensure

///
///
///
///
///
///
///
///

that the cases will not be delayed should the Court lift the stay, the parties should, in advance of the conference, schedule the necessary discovery (including depositions) as if the stay were to be lifted. If the Court ultimately continues the stay, that schedule may be vacated.

This order disposes of Docket No. 211 in *Davis* and No. 126 in *Doe*.

IT IS SO ORDERED.

Dated: August 16, 2011

_____
EDWARD M. CHEN
United States District Judge