United States District Court<br>For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE DAVIS,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant.<br>_____/<br>JOHN DOE,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant.<br>_____/ | No. C-06-6108 EMC<br><br>**RELATED TO**<br><br>No. C-09-0980 EMC<br><br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>**(Docket No. 230, C-06-6108)**<br>**(Docket No. 143, C-09-0980)** |

        The above-referenced cases have been related. In both cases, Plaintiffs – who suffer from a mental impairment or developmental disability – allege that, in violation of § 504 of the Rehabilitation the Act, the Social Security Administration ("SSA") has failed to offer reasonable accommodations to enable them to participate effectively in its processes.[1] Plaintiffs maintain that, to comply with the Rehabilitation Act, the "SSA should include training on how to communicate

---

[1] Plaintiffs have also asserted additional claims against the SSA. For example, Plaintiff Terrence Davis has also alleged a claim under the Freedom of Information Act ("FOIA"). Plaintiff John Doe has also alleged a claim under the due process clause of the federal Constitution.

1  with individuals with mental impairments [or developmental disabilities] and should modify its
2  standard written communications." Davis Docket No. 229 (Joint CMC St. at 2); *see also* Doe
3  Docket No. 142 (Joint CMC St. at 2-3).

4  Currently pending before the Court is the SSA's motion for judgment on the pleadings, in
5  which it seeks dismissal, in each case, of the § 504 claim. According to the SSA, Plaintiffs'
6  discrimination claims should be brought pursuant to the Administrative Procedures Act ("APA")
7  rather than directly under § 504. Having considered the parties briefs, as well as the oral argument
8  of counsel, the Court hereby **DENIES** SSA's motion.

## I. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "'functionally identical'" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). That is, a court considers "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Id.* at 1054; *see also Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (noting that "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss; adding that "to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true") (internal quotation marks omitted).

B. Procedural Objections

In the instant case, there is no issue of timeliness because no trial has been scheduled as of yet. However, Plaintiffs argue that the motion for judgment on the pleadings is procedurally barred for other reasons. More specifically, Plaintiffs contend that the motion is barred because (1) Judge

Patel previously instructed at a hearing held in July 2009 that the SSA was not file any more motions to dismiss, *see* Davis Docket No. 102 (Tr. at 37), and (2) the pending motion is actually a motion for summary judgment and, as this would be the second summary judgment motion filed by the SSA, it is precluded by this Court's standing order (which permits one summary judgment motion per side absent leave of the Court).

Both arguments are without merit. First, a motion for judgment on the pleadings is a different motion from a motion to dismiss under Rule 12(b)(6). Therefore, Judge Patel's statement about not wanting any more motions to dismiss is inapplicable. Furthermore, as reflected by the hearing transcript, Judge Patel made the statement about no more motions to dismiss because she did want the then-to-be-coordinated cases to be delayed by pleading battles in *Doe* and wanted discovery to move forward. Because these cases have not been held up and have moved into discovery (at least on Phase I issues), Judge Patel's statement about not wanting more motions to dismiss is not a bar to the instant motion.

Second, the SSA's motion can hardly be characterized as a motion for summary judgment. The SSA is not asking the Court to consider any evidence beyond the four corners of the pleadings or evidence of which the Court may not take judicial notice.

Accordingly, the Court turns to the merits of the Rule 12(c) motion.

C.   <u>Private Right of Action Under § 504</u>

The SSA's basic argument is that there is no private right of action against the federal government under § 504 and that, instead, a party may seek relief pursuant to the APA only. In support of this argument, the SSA largely relies on *San Carlos Apache Tribe v. United States*, 417 F.3d 1091 (9th Cir. 2005).

*San Carlos* is not directly on point because, there, the issue was whether there was an implied right of action under a different statute, *i.e.*, § 106 of the National Historic Preservation Act ("NHPA"). But, in *San Carlos*, the Ninth Circuit did approve of then-Judge Breyer's statement in *NAACP v. Secretary of Housing & Urban Dev.*, 817 F.2d 149 (1st Cir. 1987), that

> [i]t is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the *federal*

3

> government, for there is hardly ever any need for Congress to do so. That is because federal action is nearly always reviewable [under the APA] for conformity with statutory obligations without any such private right of action.

*San Carlos*, 417 F.3d at 1095 (internal quotation marks omitted). Accordingly, the Ninth Circuit "decline[d] to circumvent the APA to permit a suit against the federal agency" under the NHPA. *Id.* at 1098.

While *San Carlos* lends some support to the SSA's position, it does not dictate the result here. Notably, the Ninth Circuit stated in *San Carlos* that it would not "circumvent the APA to permit a suit against the federal agency" only in the "absen[ce] of statutory language permitting . . . suit."[2] *Id.* As Plaintiffs point out in their opposition, there is such language in § 504.

Section 504 states in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or *under any program or activity conducted by any Executive agency or by the United States Postal Service*.

29 U.S.C. § 794(a) (emphasis added). The highlighted clause emphasized above was added by amendment passed in 1978. The Ninth Circuit has construed this language and the legislative history behind it as authorizing a private right of action against both recipients of federal funds as well as the federal government itself. *See Doe v. Attorney General*, 941 F.2d 780, 785 (9th Cir. 1991), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187, 191 (1996) (concluding that Congress did not waive the federal government's immunity against monetary damage awards for violations of § 504).

In *Doe*, the Ninth Circuit explained that,

> [w]hen Congress amended section 504 in 1978, it was aware . . . that the courts had interpreted section 504 to provide a private right of action for discrimination victims. "The fact that a comprehensive

---

[2] The Washington district court opinion cited by the SSA does not take into account this language in *San Carlos*. *See Wilson v. Seattle Housing Auth.*, No. C09-226MJP, 2010 WL 1633323, at *5-6 (W.D. Wash. Apr. 22, 2010) (relying on *San Carlos* to conclude that there is no implied right of private action under § 504, but failing to address the above language in *San Carlos*).

4

> reexamination and significant amendment" of the Rehabilitation Act left section 504 intact as it previously existed and under which the federal courts had implied a private right of action "is itself evidence that Congress affirmatively intended to preserve that remedy." Congress amended the statute to prohibit discrimination "in any program or activity conducted by any Executive agency or by the United States Postal Service." Significantly, Congress did not make the amendment a new section; it did not even use a new sentence. Congress appended the new coverage to the end of the pre-existing sentence under which the private cause of action had been implied.

*Id.* at 790. Given "this method of amendment" – *i.e.*, "simply adding federal liability to a pre-existing section 504" – the Ninth Circuit concluded that "Congress intended violations of the new clause to be enforced in the same way as violations of the pre-existing clause [which permitted a private right of action]." *Id.* Thus, as Plaintiffs argue, *Doe* establishes that § 504 contains language permitting a private right of action, and *San Carlos* does not bar their suit.

The Court acknowledges that *Doe* was overruled in part by the Supreme Court's decision in *Lane v. Pena*, 518 U.S. at 187. More specifically, in *Lane*, the Supreme Court rejected the holding in *Doe* that Congress intended to provide a private right of action for damages under § 504 generally. But *Lane* did not foreclose the possibility that there could still be a private right of action under § 504 for injunctive or equitable relief, *see id.* at 190 (noting that "[t]he Government did not dispute the propriety of [the] injunctive relief" ordered by the district court; adding that "[t]he Government did . . . dispute the propriety of a compensatory damages award, claiming that the United States was protected against a damages suit by the doctrine of sovereign immunity"), and lower courts have held equitable relief may still be obtained under § 504. *See American Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 U.S. Dist. LEXIS 86524, at *21 (N.D. Cal. Apr. 23, 2008) (noting that *Lane* did not bar a private right of action for equitable relief); *Mendez v. Gearan*, 947 F. Supp. 1364, 1367 (N.D. Cal. 1996) (Henderson, J.) (stating that, under *Lane*, "[w]ith monetary damages unavailable to plaintiffs suing a federal agency under the Rehabilitation Act, the private right of action established under § 504(a) by the Ninth Circuit is limited to equitable remedies").

The SSA argues still that Congress could not have intended to waive sovereign immunity and create a private right of action, relying on § 505 of the Rehabilitation Act. *See* Reply at 4. More

specifically, the SSA points out that, in § 505(a)(2), Congress incorporated Title VI remedies in cases where the alleged discriminator is a federal fund recipient or federal provider of such funding but said nothing about incorporating these remedies where alleged discrimination occurs in a program or activity conducted by a federal agency itself. *See id.*; *see also* 29 U.S.C. § 794(a)(2) (providing that "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by *any recipient of Federal assistance or Federal provider of such assistance* under Section 794") (emphasis added).

But the SSA fails to address the fact that, in *Doe*, the Ninth Circuit took § 505(a)(2) into account. The Ninth Circuit noted:

> Section 505(a)(2) . . . appears incomplete . . . by providing only that victims of discrimination either by the recipients or the federal providers of federal financial assistance have the Title VI remedies [*i.e.*, an implied private right of action]. Section 505(a)(2) parallels the pre-1978 version of section 504's substantive prohibitions and does not include the language from section 504's contemporaneous amendment adding victims of discrimination by federal agency programs and activities to section 504's protection.
>
> This incongruity between section 504's substance and section 505's remedy appears to have occurred because the conference committee adopted the House's section 504 amendment and the Senate's section 505 version without adding section 504's additional coverage to section 505's remedy provision. Congress intended, however, to extend section 504's reach to ensure that no one would be exempt from its nondiscrimination provisions. Section 505's remedy therefore must be available to victims of discrimination by federal agencies in their programs and activities brought within section 504's umbrella by the 1978 amendment. Section 505(b) in fact contemplates enforcement for all of the substantive rights in Title V (attorney's fee provision for "any action or proceeding to enforce or charge a violation of a provision of [Title V]"). . . . .
>
> *Our analysis would not change, however, even if we did not conclude that section 505 must cover all violations of section 504.* Congress was aware that section 504 provided an implied right of action. Yet Congress did not eliminate this remedy but rather enforced it by adding section 505. We see no congressional intent to abolish the private right of action and every intent to enforce it. . . .

*Doe*, 941 F.2d at 787 n.13 (emphasis added). Later on in the opinion, the Ninth Circuit emphasized that the structure of the Rehabilitation Act also

> indicate[s] congressional intent to treat all Rehabilitation Act Title V defendants the same except that the United States as a prevailing party is not entitled to attorney's fees. Section 501 makes the federal

> government liable for employment discrimination, section 504 makes agencies liable for discrimination in their activities other than employment, and section 505[(b)] makes the government liable for attorney's fees. There is no contrary indication that Congress intended to exclude the federal government from its reach. The statute's internal approach is to prohibit discrimination against the handicapped by anyone and to install a unitary enforcement mechanism.
>
> The most reasonable interpretation from the language and structure of the statute is that Congress intended to make federal departments and agencies liable for discrimination against the handicapped in their programs and activities.

*Id.* at 791.

Accordingly, the Court concludes that there is a private right of action under § 504.

As a final argument, the SSA asserts that, even if *San Carlos* does not bar a private right of action under § 504, "Plaintiffs' claims still fall squarely under the APA under the . . . approach utilized by Judge Henderson in *Mendez v. Gearan*." Mot. at 12. In *Mendez*, the plaintiff filed suit pursuant to § 504 after being entry to the Peace Corps. Apparently, the plaintiff was denied entry because medical officials learned that she was taking an anti-depressant medication. *See Mendez*, 947 F. Supp. at 1365.

Judge Henderson noted that the plaintiff had a private right of action under § 504 (for equitable relief). *See id.* at 1367. He further noted that, under Ninth Circuit law, "the APA is an appropriate means for review of federal agency actions that allegedly violate the Rehabilitation Act." *Id.* According to Judge Henderson, because of the overlap between § 504 and the APA, he had to "determine whether one statute, at times, provides a more efficient and fair means to resolve a claim than the other." *Id.* Judge Henderson went on to explain as follows.

> "[T]he APA serves as the ideal paradigm for reviewing allegedly discriminatory agency action when the focus of the review will be on the information uniquely within the expertise of the agency." *Id.* at 1368-69. For example,
>
> [i]f this case focussed [sic] primarily on the policy of the Peace Corps in screening volunteers, an administrative review would be particularly helpful for resolution of the matter. Review of the case would require insight into how the Peace Corps operates, what the Peace Corps' ultimate mission is, what its volunteers do in the field, and how various medical conditions affect what volunteers are able to

> perform in forwarding the mission of the Peace Corps. In other words, the primary focal point of the review would be the Peace Corps itself.

*Id.* at 1369.

In contrast, the APA is not the ideal paradigm "[w]here the primary issue in a challenge to a federal agency's action is the application of a statute that the agency is not uniquely qualified to interpret." *Id.* Thus,

> if the claim here is primarily focussed [sic] on issues outside the expertise of Peace Corps, a reviewing court would not be significantly benefitted by an administrative record. In such a case, the primary focus of review would be the Rehabilitation Act, which gives rise to the plaintiff's claim. Consequently, the analysis would be essentially limited to determining whether the individual is considered disabled under the act, is otherwise qualified for the position sought, and is being excluded solely by reason of her disability.

*Id.* at 1370.

In the case under consideration, Judge Henderson acknowledged that the plaintiff was making both an individualized discrimination claim "best suited for analysis under § 504" and a "request for systemic change most appropriate for APA review."[3] *Id.* But ultimately, "[t]he weight of [the] complaint [was] oriented toward addressing her individual concerns." *Id.* That is, the primary purpose of the complaint was to secure the plaintiff's position in the Peace Corps; the secondary purpose was to "protect[] future Peace Corps volunteers from being assessed under the criteria that barred Ms. Mendez." *Id.* Under these circumstances, Judge Henderson held that the case was "more appropriately brought under the standards established by § 504" and that the case would not "benefit significantly from the type of administrative review that would occur if this case proceeded under the APA." *Id.* at 1371.

In the case at bar, Plaintiffs argue that *Mendez* actually supports their position because the primary purpose of their lawsuits is to obtain "reasonable accommodations necessary for them to participate in SSA's work reviews. Their secondary purpose is to have SSA make these

---

[3] Judge Henderson indicated that the plaintiff was not just bringing an individualized claim for discrimination but also seeking systemic change because one of the remedies she requested was "an injunction barring the Peace Corps from utilizing its current criteria concerning psychological conditions." *Mendez*, 947 F. Supp. at 1370.

8

accommodations system-wide to prevent discrimination against others similarly situated." Opp'n at 12. But in support of this argument, Plaintiffs largely cite statements or briefs filed in their lawsuits, not the complaints themselves. *See id.* It is the complaint that Judge Henderson looked to in *Mendez* and, appropriately so, because the complaint is what defines the relief sought by a plaintiff.

Looking at the complaints, the Court concludes that there is some ambiguity in the *Davis* complaint as to what the primary purpose of the lawsuit is. Mr. Davis's prayer for relief indicates that he is interested in both individualized relief as well as more systemic change. *See* Davis Compl. (Prayer for Relief ¶¶ 1-2, 4). However, the *Doe* complaint more clearly reflects that the primary purpose of the lawsuit is systemic change. Each prayer for relief that relates to the § 504 claim (as opposed to the due process claim) refers to relief needed for persons with mental or developmental disabilities. Only the first prayer for relief (relating to the § 504 claim) mentions Mr. Doe specifically. *See* Doe Compl. (Prayer for Relief ¶¶ 1-3).

Nevertheless, the Court concludes that neither dismissal of the § 504 claim in the *Davis* case nor dismissal of the § 504 claim in the *Doe* case is warranted. Contrary to what the SSA suggests, *Mendez* does not require a dismissal of a § 504 claim even where the APA provides the dominant paradigm for assessing that claim. In *Mendez*, Judge Henderson's analysis was based in large part on the Ninth Circuit's decision in *J.L. v. Social Security Administration*, 971 F.2d 260 (9th Cir. 1992). But in *J.L.*, the Ninth Circuit simply held that, *once* a plaintiff states a claim under § 504, then – and only then – may a court consider whether the APA provides the dominant paradigm for decision. *See id.* at 270 (stating that, "[o]nce past that point [*i.e.*, of stating a claim under § 504], . . . the proprietary/regulatory dichotomy does serve a limited function as a non-binding indicator of whether the APA should provide the dominant paradigm for decision"). Thus, even where the APA does provide the dominant paradigm for decision, that does not necessitate dismissal of the § 504 claim. Rather, that simply means that "administrative law principles may pertain" as opposed to tort principles. *Id.* The Court need not decide at this juncture which, if any, administrative law principles may pertain, either to the *Davis* or *Doe* case as the only relief sought by the SSA in the pending motion is dismissal.

## II. CONCLUSION

For the foregoing reasons, the Court denies the SSA's motion for partial judgment on the pleadings.

This order disposes of Docket No. 230 in the *Davis* case and Docket No. 143 in the *Doe* case.

IT IS SO ORDERED.

Dated: August 18, 2011

_____
EDWARD M. CHEN
United States District Judge